IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARMELITA TYLER and LUTHER TYLER,
Individually and on Behalf of Hermine Joe Tyler,
Keean Joe Tyler, Keeaera Tyler and Keetahni Tyler,

      Plaintiffs,

v.                                                                                          No. CIV-03-0186 JB/RLP

ALLEN HURT, M.D., EDWARD MAURIN, M.D.,
and LOVICK THOMAS, M.D.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER comes before the Court on Defendant Allen Hurt, M.D.'s Motion for Partial Dismissal of Plaintiffs' Complaint for Failure to State a Claim (Doc. 4). Defendants Lovick Thomas, M.D. (Doc. 10) and Edward Maurin, M.D. (Doc. 37) have each joined in the motion. The issue is whether New Mexico law recognizes loss of consortium or related claims for the minor children of living parents. Because the Court finds that current New Mexico law does not preclude such claims and that New Mexico courts would recognize those claims if presented with similar facts, the Court denies the Motion for Partial Dismissal.

**ALLEGATIONS**

      On October 18, 1999, Carmelita Tyler ("Tyler") gave birth to twins by caesarean section at Northern Navajo Medical Center ("NNMC") in Shiprock, New Mexico. See Complaint ¶ 5, at 2. After the birth, Tyler experienced increasing back pain. See id. ¶ 6, at 2. On November 6-7, 1999, NNMC emergency room personnel performed X-rays and a CT scan that showed abnormalities in the soft tissue around Tyler's spine. See id. ¶ 7, at 2. She was immediately transferred to the San

Juan Regional Medical Center for the purpose of ruling out the possibility that she had an infection in her thoracic spine. See id. ¶ 8, at 2. Defendant Allen Hurt ("Dr. Hurt"), the emergency room physician at San Juan Regional Medical Center, failed to evaluate Tyler's thoracic spine. Instead, Dr. Hurt ordered an MRI of her lumbar sacral spine, which focused on the tissue below the area of main concern. See id. ¶¶ 10, 12, 24, at 2, 3, 5.

Defendant Lovick Thomas ("Dr. Thomas") interpreted the MRI films. See id. ¶ 12, at 3. Despite the fact that Dr. Hurt had ordered the wrong MRI, there was enough information in the films to allow Dr. Thomas to identify that an infection was suggested, requiring further evaluation. See id. ¶ 13, at 3. Although the transfer document requested an MRI of the thoracic spine, neither Dr. Hurt nor Dr. Thomas obtained the earlier CT scans from NNMC or identified the infection. See id. ¶ 14, at 3. Instead, Dr. Hurt referred Tyler to Defendant Edward Maurin ("Dr. Maurin"), who initially accepted Tyler for admission but then changed his mind and returned her to NNMC with a simple diagnosis of "back pain." Id. ¶ 15, at 3. Despite Tyler's elevated temperature, this decision was made without obtaining diagnostic testing. See id.

On December 13, 1999, Tyler returned to seek help from the Defendants after enduring more than a month of "voracious" back pain. Id. ¶ 16, at 3. Again, despite an elevated temperature, Dr. Hurt did not order any diagnostic tests. See id. ¶ 16, at 4. He concluded that Tyler was suffering from chronic back pain and referred her to a psychiatrist. See id. ¶16, at 3.

More than two additional months passed. See id. ¶ 17, at 4. During this time, the infection raging in Tyler's spinal column continued to eat away at the bone and surrounding tissue, causing her considerable pain and destroying the vertebrae in the T8-10 region. See id. ¶ 19, at 4. She was subsequently diagnosed with a thoracic para-spinous abscess and transferred to the University of New

Mexico Hospital.  See id. ¶¶ 18-19, at 4.  The destruction was so intense that portions of her eighth and ninth ribs had to be removed.  See id. ¶ 19, at 4.  It was also necessary to install artificial stabilization material consisting of a titanium cage and lateral stabilization plates.  See id.

Tyler and her husband filed a complaint individually and on behalf of their four minor children. See id. ¶ 1, at 1.  The Complaint alleges that the Tyler children have suffered "a loss of consortium, loss of parental guidance, comfort and counseling, and loss of enjoyment of life as a result of their mother's injuries." Id. ¶ 22, at 5.  Tyler alleges that she is now permanently disabled. See id. ¶ 20, at 4.  In his Answer (Doc. 7), Dr. Hurt has denied these allegations and pled the affirmative defense that the Plaintiffs' loss of consortium claims for the minor children fail to state a claim upon which relief may be granted.  See Dr. Hurt's Answer ¶¶ 22, 38, at 4, 6.

## STANDARD FOR DECIDING A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A court should dismiss a complaint when it fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In reviewing a rule 12(b)(6) motion, a court must accept the complaint's allegations as true and determine whether those allegations, standing alone, are sufficient to state a claim for which relief may be granted.  See Thomas v. National Ass'n of Letter Carriers, 225 F.3d 1149, 1157 (10th Cir. 2000).  Dismissal of an action is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue presented by a motion to dismiss is not whether the plaintiff will ultimately prevail on his or her claims, but whether he or she is entitled to present evidence in support of those claims.  See Callaway v. United States, 568 F.2d 684, 685-686 (10th Cir. 1978).

## **LEGAL AUTHORITIES AND ANALYSIS**

Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996). In the absence of an authoritative pronouncement from the state's highest court, a federal court's task, sitting in diversity, is to predict how the state's highest court would rule if presented with the same case. See Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir. 1984). This Court must also follow any intermediate state court decision, unless other authority convinces the Court that the state supreme court would decide otherwise. See id. Furthermore, where no specific state law on point exists, this Court may look to other states' laws in an effort to reach the same result that would probably be reached were the question to be litigated in a state court. See Burgert v. Tietjens, 499 F.2d 1, 8 (10th Cir. 1974) (citations omitted).

The sole question presented by this motion is whether the Complaint alleges sufficient facts to establish that the injuries suffered by the Tyler children are compensable as a matter of New Mexico law.[1] Such injuries are compensable if the children were foreseeable plaintiffs. The foreseeability inquiry is a distinct two-step process, not melded into one factually based question. Foreseeability as a matter of law is the legal inquiry a court makes when deciding to whom a duty is owed. Factual foreseeability is the factual inquiry whether the harm was foreseeable to a particular plaintiff. The Court is obligated -- both by this motion and by the law -- to determine the former question, i.e., whether, as a matter of law, the Defendants owed a duty to Tyler's children. See

---

[1] Because the alleged negligence occurred in New Mexico and involves New Mexico defendants, substantive New Mexico law applies to this action.

Schear v. Board of County Comm'rs, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984).

The New Mexico courts have not yet specifically addressed whether children have a cause of action for loss of consortium (or loss of parental guidance, comfort, and counseling) resulting from a negligently caused injury to a living parent. Accordingly, New Mexico substantive law does not yet recognize the precise claim raised in this case. This fact does not mean, however, that this Court should dismiss the Plaintiffs' claims as a matter of law. New Mexico has also not rejected a loss of consortium claim by the child of a living parent. Moreover, the Supreme Court and Court of Appeals of New Mexico have issued several opinions, including two very recent opinions, defining and clarifying the scope of loss of consortium generally. These decisions are instructive to this Court and indicate that a state court would allow the claims in this case to proceed.

Loss of consortium is a relatively new cause of action in New Mexico. "Prior to 1994, the courts of New Mexico did not recognize a common law claim for loss of consortium." Bryant v. United States, 147 F. Supp. 2d 953, 961-962 (D. Ariz. 2000) (citing Solon v. WEK Drilling Co., 113 N.M. 566, 829 P.2d 645, 650 (1992)). New Mexico now recognizes a claim for loss of consortium in limited circumstances. Five relatively recent cases define the circumstances in which the New Mexico courts will allow loss of consortium claims.

Solon addressed whether parents of a twenty-five year old well-driller, who lived with his parents, stated a legally sufficient cause of action for the "economic loss and loss of consortium they suffered from the death of their son, which was caused by the negligence of defendant . . . ." Solon v. WEK Drilling Co., 113 N.M. at 569, 829 P.2d at 648. The Supreme Court said: "[N]egligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person . . . ." Id. (emphasis in original). The Supreme Court affirmed the district court,

5

noting that the decedent's parents were unforeseeable to the defendant and, as such, the defendant owed no duty to the parents.

The Supreme Court stated that foreseeability was "just too glaringly absent to convince us to recognize a cause of action in their favor to redress that harm." Id. at 571, 829 P.2d at 650. Thus, the court did not allow, as a matter of law, a loss of consortium claim by the parents of an adult child. See id. In reaching this decision, the Solon court also mentioned other family members and loss of consortium claims:

> While it is foreseeable that someone who is not provided a safe place to work will have living parents, the same can be said of the other relatives standing in an "intimate familial relationship" with a tort victim: his or her spouse, parent, child, grandparent, grandchild, brother, sister, and (in the case of a minor) others occupying a position in loco parentis.

Id. at 571, 829 P.2d at 650. The court went on to say that "the social policy of cutting off the liability that would otherwise extend to these family members seems sound, at least in a case in which they allege no more palpable injury than that claimed here." Id.

The law in New Mexico changed in 1994 with the New Mexico Supreme Court's decision in Romero v. Byers, 117 N.M. 422, 872 P.2d 840 (1994), overruling Tondre v. Thurmond-Hollis-Thurmond, Inc., 103 N.M. 292, 706 P.2d 156 (1985) and Roseberry v. Starkovitch, 73 N.M. 211, 387 P.2d 321 (1963). In Romero, the Supreme Court addressed whether New Mexico should recognize a claim for loss of spousal consortium. After reconsidering its earlier pronouncements, and their underlying rationales, the Supreme Court held that "the time has come for New Mexico to recognize that claim." Romero v. Byers, 117 N.M. at 424, 872 P.2d at 842. The court also recognized that such a holding "opened the door for recognition of loss of guidance and counseling as well." Id. at 428, 872 P.2d at 846. The court noted that the cause of action by a minor child for

6

loss of guidance and counseling has not been previously considered, because the basis for the action was seen as rooted in loss of consortium. See id. [2]

The Romero court's holding is limited to claims by minor children following the death of a parent. The precise question in this case is whether the Supreme Court would, if presented with the question, extend loss of consortium, guidance, and counseling claims to minor children of negligently injured living parents. Several New Mexico cases subsequent to Romero are particularly helpful in answering this question. Because this exact issue is a matter of first impression under New Mexico law, however, this Court has also looked to the law of other jurisdictions and finds that it supports the conclusion that New Mexico courts would recognize the claim presented in this case.

Since the time that the New Mexico courts first recognized a cause of action for loss of consortium, they have continued to expand the scope of the claim. The first step was to allow spouses and children of a deceased parent to bring loss of consortium, guidance, and counseling claims. See id. at 424, 428, 872 P.2d at 842, 846. Four years later, the Supreme Court of New Mexico extended the availability of such claims to "familial care-taker[s], such as a parent or grandparent" in circumstances where a minor who lived with the plaintiff is seriously physically injured or killed and the plaintiff suffers emotional injury as a result of the loss of the child's companionship, society, comfort, aid, and protection. Fernandez v. Walgreen Hastings Co., 1998-NMSC-039, ¶ 31, 968 P.2d 774, 784 (allowing claims by grandparents who are primary care-takers

---

[2] At oral argument, defense counsel raised the argument that the Romero decision did not allow loss of consortium claims to be brought directly by the children of deceased parents. Counsel argued that such a loss could only be recovered as a part of the value of the decedent's estate. While it is true that Romero was decided in the context of the Wrongful Death Act, the Court does not read Romero as precluding a direct action for loss of consortium, guidance, and counseling by a child of a decedent.

of a child).[3]  This year, the New Mexico courts have twice taken the opportunity to extend the reaches of this claim even further.  See Lozoya v. Sanchez, 2003-NMSC-009, 66 P.3d 948 (holding that a jury should hear a loss of consortium claim by unmarried cohabitant in a long-term relationship); Fitzjerrell v. City of Gallup, Court of Appeals of New Mexico, Docket No. 22,119 (filed August 28, 2003) (reversing dismissal of loss of consortium claim brought by decedent's parents and siblings and holding that whether the plaintiffs had a significant enough relational bond with victim to recover was a proper question for the fact finder).

While the recent New Mexico court rulings may not have opened the floodgates for loss of consortium claims in New Mexico, they do suggest that trial courts – both state and federal – must look closely at the situations before them to determine whether it is one in which New Mexico would recognize a loss of consortium claim.  In Lozoya v. Sanchez, the Supreme Court, relying on Solon and Fernandez in its analysis, held that a jury should consider a loss of consortium claim by an unmarried cohabitant.  Sara and Ubaldo Lozoya married following the first of two motor vehicle accidents which were at issue in that case.  The loss of consortium claim was based on the first accident, during which time the couple was not yet married.

In Fitzjerrell, the Court of Appeals of New Mexico was called upon to determine whether the parents and siblings of a deceased adult child, with whom they did not live, could maintain a common

---

[3] The Defendants contend that the Romero court had an opportunity to extend loss of consortium, guidance, and counseling claims to minor children of living parents, but it limited its holding to minor children following the death of a parent.  The Defendants also argue that the Solon court, like the Romero court, had the opportunity to extend such claims to minor children of living parents and it also declined.  The Defendants also contend that, if the court in Fernandez had wanted to extend the bounds of loss of consortium claims beyond the parameters set forth, it certainly could have done so, but chose not to do so.  It is certainly possible that the state courts also could have, in dicta, decided the facts of this case.  This Court, however, must assume that the state courts properly limited their decisions to the facts before it.  Moreover, this argument fails to consider the language contained in more recent New Mexico court decisions.

law cause of action for loss of consortium.  The Court of Appeals recognized that, "[f]or the past decade or so, our courts have struggled with the question of who can maintain such a cause of action."  Fitzjerrell v. City of Gallup, slip op. at 1.  The Honorable Roderick Kennedy, Judge, noted that the New Mexico courts have gone to great lengths to balance a legal duty to foreseeable injured parties with public policy restricting access to this cause of action from persons with relationships outside a certain degree or quality of closeness.  See id.

Judge Kennedy interpreted Lozoya v. Sanchez as clearly stating that "the determination of who can recover for loss of consortium should be based on facts establishing the quality of a relationship, not on a legal definition establishing or rejecting one."  Fitzjerrell v. City of Gallup, at 1.  Quoting Lozoya, the Court of Appeals in Fitzjerrell stated: "'It is appropriate that the finder of fact be allowed to determine, with proper guidance from the court, whether a plaintiff had sufficient enough relational interest with the victim of a tort to recover for loss of consortium.'"  Id. (quoting Lozoya v. Sanchez, 2003-NMSC-009, ¶ 21, 66 P.3d 948).  Judge Kennedy noted that this process "is properly rooted in a factual determination . . . ."  Fitzjerrell v. City of Gallup, at 1.

The Court of Appeals in Fitzjerrell, relying on Lozoya and Fernandez, stated that a very close and intimate relationship with the injured party is required to pursue an action for loss of consortium.  See id. at 6.  To determine whether a claimant has a sufficiently close and intimate relationship with the victim, the court must consider several factors, including, but not limited to: duration of the relationship; mutual dependence; common contributions to a life together; shared experience; living in the same household; financial support and dependence; emotional reliance on each other; qualities of their day to day relationship; and the manner in which they related to each other in attending to life's mundane requirements.  See id. at 7 (citing Lozoya v. Sanchez, 2003-NMSC-009, ¶ 27).  In the

Court of Appeals' view, Lozoya's "mutual dependence" factors include emotional, physical, and financial support and dependence. See id.

Judge Kennedy stated that Lozoya makes clear that a relationship that creates a compensable interest is one that is intimate, protective, interdependent, and intertwined in functional (the way the people in the relationship meet day-to-day situations together), financially interdependent, and temporal ways (spending time together at least to the extent of living together in the same household). See id. (citing Lozoya v. Sanchez, 2003-NMSC-009, ¶ 25).

The Defendants argue that Tyler's minor children, as a matter of law, were not foreseeable plaintiffs and thus, any alleged injuries to the minor children were not foreseeable to them. Accordingly, they assert that they did not owe any duty to the children. In Fernandez v. Walgreen Hastings Co., the Supreme Court of New Mexico offered the following description of how Romero and Solon have "set out the test for determining whether a duty is owed to a plaintiff":

> In New Mexico, negligence encompasses the concepts of foreseeability of harm to the injured person and of a duty of care *toward that person* . . . . Duty and foreseeability have been closely integrated concepts in tort law since the court in [Palsgraf] stated the issue of foreseeability in terms of duty. If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed *to that plaintiff* by the defendant. In determining duty, it must be determined that the injured party was a foreseeable plaintiff – that he was within the zone of danger created by [the tortfeasor's] actions; in other words to whom was the duty owed? A duty to an
> individual is closely intertwined with the foreseeability of injury to *that individual* resulting from an activity conducted with less than reasonable care by the alleged tortfeasor.

Fernandez v. Walgreen Hastings Co., 1998-NMSC-039, ¶ 30, 968 P.2d at 783 (emphasis in original). The court called this the "modern test" that trial courts should apply to loss of consortium claims. See id. Furthermore, the Supreme Court of New Mexico has stated that, "[o]ur duty rule also asks whether any public policy factors preclude the court from imposing a duty of care toward a

foreseeable plaintiff." Lozoya v. Sanchez, 2003-NMSC-009, ¶ 15, 66 P.3d at 953.

The Fernandez court noted that the Romero court had applied this "modern test" when presented with the question whether the surviving spouse was entitled to claim loss of consortium damages. See id. The Fernandez court held that the trial court should have applied this "modern test" to determine whether a primary familial caretaker of a minor child was within the scope of foreseeability, such that the duty of the defendant in that case would extend to include such claims.

In one sense, the Plaintiffs are correct that the injuries, if any, that infants and minor children suffer when a tort-feasor deprives them of their mother's love and affection under circumstances like those presented here could bring them within the zone of danger that the Defendants created. See Plaintiffs' Response at 4. The Defendants arguably knew or should have known that, left untreated and unexplored, an infection in Tyler's spinal column would dissolve her vertebrae and cause her considerable pain in the process. Such injury and pain would, in turn, prevent her from providing the care, love, and affection her newborn twins and other children required.

On the other hand, the Defendants are correct that there are valid policy reasons for limiting loss of consortium claims. See Defendants' Reply at 4. First, there is an intangible character to the loss. Second, there is difficulty in measuring damages. Third, there is a danger of double recovery. Fourth, there is the danger of increased litigation and multiple claims. Fifth, there is a danger of extensive liability and increased insurance costs. Sixth, there is some absence of well-defined foreseeability factors. Seventh, there is a need for line drawing. See id. (citing Todd R. Smyth, Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child, 54 A.L.R.4th 112, 119 (1987)). The Court will consider each party's argument in light of New Mexico law.

The Plaintiffs contend that the minor children involved in this case should be considered

foreseeable plaintiffs, and thus, a duty of care extended to them. This view is consistent with the analysis contained in the two most recent opinions issued by the New Mexico courts. The Supreme Court has stated that, "[a]lthough imposition of a duty is a legal question for the court, oftentimes it is dependent on a factual determination, which we entrust to the jury." Lozoya v. Sanchez, 2003-NMSC-009, ¶ 21, 66 P.3d at 955. In Fitzjerrell, the Court of Appeals went even further by stating that "a duty to a prospective plaintiff springs only from the foreseeability of injury to that close and intimate bond." Fitzjerrell v. City of Gallup at 7. "The legal availability of relief depends on the factual determination of whether a plaintiff has a significant enough relational bond with the victim of a tort to recover for loss of consortium." Id. at 8. Thus, the Court of Appeals appears to have stated that most loss of consortium claims should go to the jury if the court finds that a jury might reasonably find that significant relational bond.

The Defendants point to the policy reasons in favor of restricting loss of consortium claims and argue that the threat of infinite litigation and liability is, at some point, more than society can bear. They assert that, indeed, it is claims similar to those of the Plaintiffs that have motivated New Mexico courts to place some limits on loss of consortium claims:

> [A particular case recognizing a claim for loss of spousal consortium] does not compel the conclusion that foreseeable injury to a legally recognized relationship necessarily postulates a cause of action; instead it clearly warns that social policy must at some point intervene to delimit liability. [The tort victim] for example, foreseeably has not only a husband (who has a cause of action . . .) and . . . children . . . , but also parents . . .; foreseeably, likewise, she has brothers, sisters, cousins, in-laws, friends, colleagues, and other acquaintances who will be deprived of her companionship. No one suggests that all such persons possess a right of action for loss of [the victim's] consortium; all agree that somewhere a line must be drawn.

Wilson v. Galt, 100 N.M. 227, 234, 668 P.2d 1104, 1111 (Ct. App. 1983) (quoting Borer v. American Airlines, Inc., 563 P.2d 858, 861-862 (1977)).

Since the time of Wilson v. Galt, however, New Mexico loss of consortium law has undergone immense change. The New Mexico courts have completely reevaluated the policy considerations related to loss of consortium and have been more convinced by the policies and rationales that favor extending the availability of the claim, rather than those that favor limiting it. See Lozoya v. Sanchez, 2003-NMSC-009, ¶ 17, 66 P.3d at 954 ("More convinced by the policies and rationales that favor recognizing the claim by unmarried cohabitants in certain circumstances, we conclude that the jury should have been allowed to consider Ms. Lozoya's claim."). The "certain circumstances" that the court reviewed to find that a jury should hear the claim focused on the many indicia that the Lozoyas had a long-term, committed, albeit unmarried, relationship. The Supreme Court continued, noting:

> Our courts have shown that the sound assessment of the quality of interpersonal relationships is not beyond a jury's ken and that *courts are capable of dealing with the realities, not simply the legalities, of relationships to assure that resulting emotional injury is genuine and deserving of compensation.* We agree. Although imposition of a duty is a legal question for the court, oftentimes it is dependent on a factual determination, which we entrust to the jury. It is appropriate that the finder of fact be allowed to determine, with proper guidance from the court, whether a plaintiff had a *sufficient enough relational interest* with the victim of a tort to recover for loss of consortium.

Lozoya v. Sanchez, 2003-NMSC-009, ¶ 21, 66 P.3d at 955-956 (emphasis added).

Consideration of the law from other jurisdictions supports the conclusion that the Supreme Court of New Mexico would most likely allow a claim such as Tyler's children's to go forward. Such consideration is particularly appropriate in light of the New Mexico courts prior reliance on other states' case law. For example, in Lozoya v. Sanchez, the Supreme Court noted at the outset that no other state had yet allowed unmarried cohabitants to recover for loss of consortium. See id. at ¶ 17, 66 P.3d at 954. The court went on to discuss various decisions from other jurisdictions before

13

holding that New Mexico would recognize the claim for unmarried cohabitants. Thus, the fact that no other state had reached that conclusion did not prevent New Mexico from deciding that it would expand loss of consortium law.

A review of the current state of the law in other jurisdictions reveals that the majority of states do not recognize a claim for loss of consortium by the children of a living parent. See Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent, 11 A.L.R. 4th 549 (1982). A growing minority of courts, however, have allowed such claims.[4] In light of New Mexico's apparent willingness to expand the scope of loss of consortium, the Court cannot find that the New Mexico courts would be unwilling to allow the Tyler

---

[4] See Marlys Bear Medicine v. U.S., 192 F. Supp. 2d 1053 (D. Mont. 2002) (Montana law allows loss of consortium claims by minor child whose parent has been killed or injured); In re Air Crash at Little Rock, Arkansas, on June 1, 1999, 164 F. Supp. 2d 1126 (E.D. Ark. 2001), opinion corrected and superseded on other grounds, 170 F. Supp. 2d 861 (loss of consortium of a child, like a spouse's loss of consortium, is a derivative cause of action, which must be filed in conjunction with a parent's pending cause of action); Reighley v. International Playtex, Inc., 604 F. Supp. 1078 (D. Colo. 1985) (to support independent claim for loss of parental consortium and companionship minor child must show dependence on the deceased parent for both economic and emotional support); Giuliani v. Guiler, 951 S.W.2d 318 (Ky. 1997), as modified on denial of reh'g, (Oct. 2, 1997) (minor children have an independent claim for loss of parental consortium); Upjohn Co. v. Freeman, 885 S.W.2d 538 (Tex. Ct. App. 1994) (Texas law recognizes a cause of action for the loss of parental consortium); Craft v. Hermes Consol., Inc., 797 P.2d 559 (Wyo. 1990) (holding that minor children have an independent claim for loss of parental consortium resulting from injuries tortiously inflicted on their parent by a third person and that claim should be joined with the injured parent's claim whenever feasible); Villareal v. State, Dept. of Transp., 774 P.2d 213 (Ariz. 1989) (overruling prior precedent and holding that children may recover for loss of consortium when a third party causes serious, permanent, and disabling injury to their parent); Ueland v. Reynolds Metals Co., 691 P.2d 190 (Wash. 1984) (children's cause of action for loss of parental consortium when parent is injured through negligence of another may be brought in Washington subject to joinder with injured parent's claim whenever feasible); Theama v. Kenosha, 344 N.W.2d 513 (Wis. 1984) (child may bring cause of action for loss of parent's society and companionship resulting from another's negligence, provided that child is a minor); Glicklich v. Spievack, 452 N.E.2d 287 (Mass. App. Ct. 1983) (jury properly awarded damages for loss of parental guidance and society to nine-year-old child based on physicians' failure to diagnose his mother's breast cancer, which failure had resulted in severe shortening of mother's life expectancy); Berger v. Weber, 303 N.W.2d 424 (Mich. 1981) (departing from earlier Michigan decisions and recognizing a cause of action by a minor for loss of parental society and companionship when a parent is negligently injured).

14

children's claim to go forward when the growing trend, albeit a minority, among other jurisdictions is to allow such claims.

While this policy decision will need to be made, it is not the task of this federal court sitting in diversity. The task of this Court is to determine what the law of New Mexico is and, if there is no controlling decision, determine how the Supreme Court of New Mexico would rule if presented with the same facts. The Court believes that the state courts would permit such a claim and recognize loss of consortium for minor children of living parents under New Mexico law. Accordingly, the Plaintiffs state a claim upon which relief may be granted.

Not only does it appear that New Mexico would expressly recognize this cause of action if given the opportunity, it is important to note that current New Mexico law does not limit the scope of foreseeability to exclude the claim that the Tyler children bring in this case. No New Mexico court has yet applied the "modern test" that the Supreme Court outlined in Fernandez to claims such as those at issue here. Even more importantly, no state court has yet applied the expansive language of Fitzjerrell to a novel loss of consortium claim.

Applying New Mexico law, and relying upon Solon, Romero, and Fernandez, the federal court in Arizona recently addressed loss of consortium claims by parents and minor siblings of a 19-year old family member. See Bryant v. United States, 147 F. Supp. 2d 953 (D. Ariz. 2000). The plaintiffs relied heavily on the Romero case, arguing that Romero had "opened the door" to allow loss of consortium claims by parents and minor siblings of a teenage family member. The Bryant court denied the minor siblings' claims for the loss of consortium of their sibling stating that "a subsequent New Mexico Supreme Court case . . . provides considerable guidance regarding lost consortium claims." Id. (citing Fernandez v. Walgreen Hastings Co., 126 N.M. 263, 968 P.2d 774).

15

The decision of the federal court sitting in Arizona in Bryant is not persuasive for two reasons. First, it is based on the four elements discussed in Fernandez pertaining specifically to caretakers of minor children and did not use either the analysis set forth in the modern test regarding foreseeability and scope of duty nor the factors set forth in Lozoya and Fitzjerrell. Second, the circumstances in that case are different from those presented here, where the Defendants have extensive knowledge regarding the Plaintiffs' family and the identity of the individuals who are within the zone of danger created by their negligence.

The court in Fernandez held that the trial court had erred because it failed to apply the "modern test" to the loss of consortium claims brought in that case. If the Court were to grant the Defendants' motion, this Court would commit the same error. That error would be amplified by the new tests laid out in the two most recent opinions. The duty to the Tyler children is "closely intertwined" with the foreseeability of their injuries to these Defendants from their medical negligence in caring for Carmelita Tyler. Proper application of these tests counsels that the Court should deny this motion.

The Complaint alleges facts that establish that Ms. Tyler's minor children were foreseeably within the zone of danger that the Defendants' alleged medical negligence created. Accordingly, New Mexico law establishes that the minor children are entitled to have their claims heard by a jury.

**WHEREFORE, IT IS ORDERED** that the Defendants' Motion for Partial Dismissal of Plaintiffs' Complaint for Failure to State a Claim is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

James P. Lyle
Law Offices of James P. Lyle, P.C.
Albuquerque, New Mexico

Timothy J. Tuthill
Tuthill & Sheehan, P.C.
Cortez, Colorado

*Attorneys for Plaintiffs*


Deborah A. Solove
Miller Stratvert P.A.
Albuquerque, New Mexico

*Attorneys for Defendant Allen Hurt, M.D.*


Ned Shepherd
Hatch, Allen & Shepherd, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant Edward Maurin, M.D.*


Michael J. Dekleva
Madison, Harbour, Mroz & Brennan, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant Lovick Thomas, M.D.*